UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, § § § § | |
| Plaintiff, § | CIVIL ACTION NO. _____ |
| § | |
| V. § | |
| § | |
| U.S. POLYCO, INC., JARED JOSEPH MIGUEZ, JUSTIN CHAMBERS, and CRYSTAL CHAMBERS, § § § § § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE COURT:

Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("CSU") files this lawsuit pursuant to the Federal Judgment Act found at 28 U.S.C. § 2201 for a declaration that CSU has no duty to defend and indemnify U.S. Polyco, Inc. ("Polyco") or Jared Joseph Miguez ("Miguez") in the Underlying Lawsuit. In support of this Complaint, CSU respectfully shows as follows:

**I.
PARTIES, JURISDICTION AND VENUE**

1.1     Plaintiff CSU is domiciled in Delaware with its principal place of business in Cincinnati, Ohio.

1.2     Upon information and belief, Defendant U.S. Polyco, Inc. is a Nevada corporation, with its principal place of business in Nevada. Polyco does business in Ennis County, Texas, and can be served with process through its registered agent, David Harlan, at 3901 S. Interstate 45, Ennis, Texas 75119, or wherever he may be found.

1.3     Upon information and belief, Jared Joseph Miguez is an individual and resident of Ellis County, Texas.  Miguez may be served at 2217 Liriope Lane, Waxahachie, Texas 75165, or wherever he may be found.

1.4     Upon information and belief, Justin Chambers is an individual and resident of Hood County, Texas.  Justin Chambers may be served at 3103 Shady Lane, Granbury, Texas 76049, or wherever he may be found.

1.5     Upon information and belief, Crystal Chambers is an individual and resident of Hood County, Texas.  Crystal Chambers may be served at 3103 Shady Lane, Granbury, Texas 76049, or wherever she may be found.

1.6     This declaratory judgment action is brought under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  The jurisdiction of this Court is based upon the diversity of the Plaintiff from the Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Because the parties to this lawsuit are citizens of different states and the amount in controversy exceeds $75,000, this Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332.

1.7     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this judicial district is overseeing the Underlying Lawsuit at issue in the present declaratory judgment lawsuit.

## II.
## BACKGROUND

2.1     This declaratory judgment action arises from a lawsuit filed in the 40th Judicial District Court of Ellis County, Texas, styled as Cause No. 99978; *Justin Chambers and Crystal Chambers v. U.S. Polyco, Inc. and Jared Joseph Miguez* ("Underlying Lawsuit").  Justin

Chambers' ("Justin") and Crystal Chambers' ("Crystal") Petition will be referred to throughout as the "Petition".  A copy of the Petition is attached hereto as *Exhibit A*.

2.2.   Justin Chambers and Crystal Chambers are Plaintiffs in the Underlying Lawsuit.

2.3   The Petition in the Underlying Lawsuit alleges Miguez was an employee of Polyco at all times relevant to the matter.

2.4   The Petition alleges on April 23, 2018, Justin Chambers arrived at Polyco's plant in Ennis, Texas.  Justin Chambers alleges he was an employee of R-Tex Services, LLC (R-Tex), who was hired to demolish and remove one large steel tank on Polyco's grounds ("Project").

2.5   The Petition alleges on April 23, 2018, Justin Chambers was operating a cutting torch to begin to cut along a catwalk that connected two large steel tanks at a height of about thirty feet, under the direction and with the approval of Miguez, Polyco's Plant and Safety Manager.  The Petition alleges during the initial act of utilizing the torch to cut a catwalk connecting the two tanks, one of the tanks exploded throwing Justin into an open steel tank containing asphalt, a mixing blade, and other materials.  The Petition alleges the explosion caused burns on Plaintiff's body, a fracture of his right leg, and other injuries.

2.6   The Petition alleges at the time and occasion in question, Justin Chambers was an employee of R-Tex Services, LLC, a company that was hired by Polyco, and Justin Chambers was working at the direction and under the supervision of Polyco.

2.7   A negligence cause of action was filed against Polyco and Miguez.

2.8   Justin Chambers seeks physical pain in the past and future, mental anguish in the past and future, disfigurement in the past and future, physical impairment in the past and future, costs for medical expenses in the past and future, loss of earning capacity, and exemplary damages due to gross negligence.

2.9    Crystal Chambers alleges as the wife of Justin Chambers, she has suffered significant losses including: loss of consortium in the past and in all probability in the future.

2.10    CSU is defending Polyco and Miguez in the Underlying Lawsuit under a reservation of rights.

2.11    A Budget Proposal ("Proposal") dated March 13, 2018 was submitted by R-Tex Services to Polyco. Upon information and belief, the "Proposal" is being treated as the contract between R-Tex and Polyco for work on the Project. The Proposal does not include any insurance requirements for R-Tex. The Proposal also does not require R-Tex to name Polyco as an additional insured in its commercial general liability policies. The Proposal does not include an agreement whereby R-Tex would defend Polyco from any and all liability, claims, actions or costs. The Proposal is attached hereto as *Exhibit B*.

## III.
## THE POLICY

3.1    CSU issued Commercial General Liability primary policy number CSU0058737, effective from June 5, 2017 to June 5, 2018, ( "Primary Policy") and excess policy number CSU0058752, effective from June 5, 2017 to June 5, 2018 ("Excess Policy") to Polyco. The Primary Policy provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A –BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to

which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is described in Section **III** –Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments –Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*\*\*

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*\*\*

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2.,Exclusions of Section I – Coverage B – Personal and Advertising InjuryLiability**

\*\*\*

2. **Exclusions**

   This insurance does not apply to:

   Any claim of indemnification for punitive or exemplary damages.  If a suit is brought against any insured for a claim covered by this Coverage Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action.  However, we will not have an obligation to pay for any costs, interest, or damages, attributable to punitive or exemplary damages.  If state law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is added.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONTRACTORS – CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\* \* \*

**EXCLUSION – BODILY INJURY TO CONTRACTORS' OR SUBCONTRACTORS' EMPLOYEES**

A. The following exclusion is added to **Paragraph 2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

2. **Exclusions**

   This insurance does not apply to:

   "Bodily injury" to:

   a. Any "employee" of any:

      **(1)** "Contractor"; or

      **(2)** "Subcontractor"; and

          **(a)** Arising out of and in the course of

              **1)** Employment; or

              **2)** Performing duties related to the conduct of an insured's business or the business of a "contractor" or "subcontractor".

   **b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

   This exclusion applies:

      **(1)** Whether an insured may be liable as an employer or in any other capacity; and

      **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury, including any obligation to pay damages by reason of the assumption of liability in an "insured contract" or agreement.

**B.** The following definitions are added and apply with respect to this endorsement:

"Contractor" and/or "Subcontractor" means a person, company or organization who agrees in any oral or written contract or agreement with any person or organization to undertake to perform work; to perform a service; or to complete a job.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INDEPENDENT CONTRACTORS LIMITATIONS OF COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. Section IV – Commercial General Liability Conditions** is amended to include the following language:

As a condition to and for coverage to be provided by this policy, you must do all of the following:

**1.** Obtain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage verifying valid commercial General Liability Insurance written on an "occurrence" basis with Limits of Liability of at least:

   **a.** $1,000,000 each "occurrence";

   **b.** $2,000,000 general aggregate, per project basis; and

   **c.** $2,000,000 Products-Completed Operations aggregate.

2.  Obtain a formal written contract stating the independent contractors and subcontractors have agreed to defend, indemnify and hold you harmless from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit presented, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor.

3.  Verify in the contract that your independent contractors and subcontractors have named you as an additional insured on their Commercial General Liability Policy for damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of or caused by any operations and completed operations of any independent contractor or subcontractor. Coverage provided to you by any independent contractor or subcontractor must be primary and must be provided by endorsement CG 20 10 (7/04 edition) and CG 20 37 (7/04 edition), or their equivalent. Completed operations coverage must be maintained for a minimum of two years after the completion of the formal written contract.

**This insurance will not apply to any loss, claim or "suit" for any liability or any damages arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless all of the above conditions have been met.**

3.2   CSU0058737, the Primary Policy, is listed as the Controlling Underlying Insurance in the Excess Policy. The Excess Policy provides, in relevant part, as follows:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

\*\*\*

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

**SECTION I –COVERAGES**

**1. Insuring Agreement**

a.  We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which insurance provided under this Coverage Part applies.

b.  The amount we will pay for "loss" is limited as described in Section **II**- Limits of Insurance.

    c. This insurance applies to damages that are subject to an applicable "retained limit". If any other limit, such as, a sublimit is specified in the "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

    d. If the "controlling underlying insurance" requires, for a particular claim, that the injury or damages occur during its policy period in order for that coverage to apply, then this insurance will only apply to that injury or damages if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular damage takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that damage takes place during the policy period of this Coverage Part.

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. The exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

Insurance provided under this Coverage Part does not apply to:

\*\*\*

**SECTION IV – DEFINITIONS**

Except as otherwise defined in this Coverage Part or in any endorsement to this Coverage Part, the definition of terms and phrases contained in this Coverage Part and any endorsements will be the same as those terms and phases are defined in the "controlling underlying insurance".

**1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed as such in our Schedule of Controlling Underlying Insurance.

**2.** "Controlling underlying insurer" means an insurer who provides any policy of insurance listed as such in our Schedule of Controlling Underlying Insurance.

**3.** "Event" means an occurrence, offense, accident, act, error or omission, or other event to which the applicable "controlling underlying insurance" applies.

**4.** "Loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

    **a.** Settlements, judgments, binding arbitration; or

    **b.** Other binding alternate dispute resolution proceeding entered into with our consent.

"Loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

\*\*\*

## IV.
## CLAIMS FOR DECLARATORY RELIEF

4.1   The Petition alleges Justin Chambers was hired by R-Tex to work on the Project. The Petition alleges R-Tex was hired by Polyco, thereby making R-Tex a subcontractor of Polyco. Justin Chambers alleges he was injured while he was working on the Project and pursuant to Polyco's instructions. Based on Justin Chambers' allegations in the Petition, it is clear Justin Chambers was performing work for Polyco's subcontractor that was related to the conduct of Polyco's business and R-Tex's business at the time of Justin Chambers' alleged injury. Accordingly, the Bodily Injury to Contractors' or Subcontractors' Employees Exclusion applies to preclude coverage for Polyco and Miguez.

4.2   The Proposal did not require R-Tex to maintain insurance, defend Polyco or name Polyco as an additional insured in R-Tex's insurance policies. Accordingly, Polyco failed to verify R-Tex had valid commercial general liability insurance, failed to include in any contract, including the Proposal, between Polyco and R-Tex that R-Tex agreed to defend Polyco from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit present, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor, and failed to verify that R-Tex named Polyco as an additional insured under R-Tex's Commercial General Liability Policy. Therefore, the Independent Contractors Limitations of Coverage Endorsement ("Independent Contractors Endorsement") applies to preclude coverage for Polyco and Miguez.

4.3   The Policy does not cover punitive or exemplary damages.

4.4   The Excess Policy includes the same exclusions as the Primary Policy.

4.5   CSU seeks a declaration from the Court that CSU owes no duty to defend or indemnify Polyco or Miguez under the Primary Policy for the claims at issue in the Underlying

Lawsuit pursuant to the Bodily Injury to Contractors' or Subcontractors' Employees Exclusion contained in the Primary Policy.

4.6    CSU seeks a declaration from the Court that CSU owes no duty to defend or indemnify Polyco or Miguez under the Primary Policy for the claims at issue in the Underlying Lawsuit pursuant to the plain language of the Independent Contractors Limitation Endorsement contained in the Primary Policy.

4.7    CSU seeks a declaration from the Court that CSU owes no duty to defend or indemnify Polyco or Miguez under the Excess Policy pursuant to the insuring agreement of the Excess Policy, and the Bodily Injury to Contractors' or Subcontractors' Employees Exclusion and Independent Contractors Limitation Endorsement contained in the Primary Policy

4.8    CSU seeks a declaration from the Court that CSU owes no duty to defend or indemnify Polyco or Miguez under the Primary Policy or Excess Policy for any punitive or exemplary damages pursuant to the Punitive and Exemplary Damages Exclusion.

## V.
## CONCLUSION AND PRAYER

5.1    CSU respectfully requests a judgment from this Court that (1) CSU does not owe a duty to defend Polyco or Miguez in the Underlying Lawsuit under the Primary Policy or Excess Policy; and (2) CSU does not owe a duty to indemnify Polyco or Miguez for any claims or causes of action asserted in the Underlying Lawsuit under either the Primary Policy or Excess Policy.  CSU further asks for such other relief to which it may be entitled in law or in equity.

> Respectfully submitted,
>
> */s/Harrison H. Yoss*
> Harrison H. Yoss
> Texas State Bar No. 22169030
> hyoss@thompsoncoe.com

Samantha L. Halpern
Texas State Bar No. 24099838
shalpern@thompsoncoe.com

THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832
(214) 871-8200
(214) 871-8209 – FAX

**ATTORNEYS FOR PLAINTIFF**